– Buyer specifically requests in advance to receive material, nonpublic information in writing.

    (K)    Comply with all rules and regulations of the SEC applicable to the registration of the Securities.

(a) <u>Registration Expenses</u>. The Company shall pay all fees and expenses incident to the performance of or compliance with Section 6 of this Agreement by the Company, including without limitation (i) all registration and filing fees and expenses, including without limitation those related to filings with the SEC, any Principal Market and in connection with applicable state securities or Blue Sky laws, (ii) printing expenses (including without limitation expenses of printing certificates for Registrable Securities), (iii) messenger, telephone and delivery expenses, (iv) fees and disbursements of counsel for the Company, (v) fees and expenses of all other Persons retained by the Company in connection with the consummation of the transactions contemplated by this Agreement, and (vi) all listing fees to be paid by the Company to the Principal Market.

(b) <u>Indemnification</u>

    (i)    <u>Indemnification by the Company</u>. The Company shall, notwithstanding any termination of this Agreement, indemnify and hold harmless each Buyer, the officers, directors, partners, members, agents and employees of each of them, each Person who controls any such Buyer (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act) and the officers, directors, partners, members, agents and employees of each such controlling Person, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses (collectively, "Losses"), as incurred, arising out of or relating to (A) any misrepresentation or breach of any representation or warranty made by the Company in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, (B) any breach of any material covenant, agreement or obligation of the Company contained in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, or (C) any untrue or alleged untrue statement of a material fact contained in the Registration Statement, any Prospectus or any form of Company prospectus or in any amendment or supplement thereto or in any Company preliminary prospectus, or arising out of or relating to any omission or alleged omission of a material fact required to be stated therein or necessary to make the statements therein (in the case of any Prospectus or form of prospectus or supplement thereto, in the light of the circumstances under which they were made) not misleading, except to the extent, but only to the extent, that (x) such untrue statements, alleged untrue statements, omissions or alleged omissions are based solely upon information regarding such Buyer furnished in writing to the Company by such Buyer for use therein, or to the extent that such information relates to such Buyer or such Buyer's proposed method of distribution of Registrable Securities, or (y) the use by such Buyer of an outdated or defective Prospectus after the Company has notified such Buyer in writing that the Prospectus is outdated or defective and prior to the receipt by such Buyer of the Advice contemplated in <u>Section 6(f)</u>. The Company shall notify the Buyers promptly of the institution, threat or assertion of any Proceeding of which the Company is aware in connection with the transactions contemplated by this Agreement.

    (ii)    <u>Indemnification by Buyers</u>. Each Buyer shall, severally and not jointly,

indemnify and hold harmless the Company, its directors, officers, agents and employees, each Person who controls the Company (within the meaning of Section 15 of the Securities Act and Section 20 of the Exchange Act), and the directors, officers, agents or employees of such controlling Persons, to the fullest extent permitted by applicable law, from and against all Losses incurred, arising out of or relating to (A) any misrepresentation or breach of any representation or warranty made by Buyer in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, (B) any breach of any material covenant, agreement or obligation of Buyer contained in the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby, or (C) any untrue or alleged untrue statement of a material fact contained in the Registration Statement, any Prospectus or any form of Company prospectus or in any amendment or supplement thereto or in any Company preliminary prospectus, or arising out of or relating to any omission or alleged omission of a material fact required to be stated therein or necessary to make the statements therein (in the case of any Prospectus or form of prospectus or supplement thereto, in the light of the circumstances under which they were made) not misleading, to the extent, that (x) such untrue statements, alleged untrue statements, omissions or alleged omissions are based solely upon information regarding such Buyer furnished in writing to the Company by such Buyer for use therein, or to the extent that such information relates to such Buyer or such Buyer's proposed method of distribution of Registrable Securities, or (y) the use by such Buyer of an outdated or defective Prospectus after the Company has notified such Buyer in writing that the Prospectus is outdated or defective and prior to the receipt by such Buyer of the Advice contemplated in Section 6(f). In no event shall the liability of any selling Buyer hereunder be greater in amount than the dollar amount of the net proceeds received by such Buyer upon the sale of the Registrable Securities giving rise to such indemnification obligation.

(iii) Conduct of Indemnification Proceedings. If any Proceeding shall be brought or asserted against any Person entitled to indemnity hereunder (an "**Indemnified Party**"), such Indemnified Party shall promptly notify the Person from whom indemnity is sought (the "**Indemnifying Party**") in writing, and the Indemnifying Party shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of all fees and expenses incurred in connection with defense thereof; provided, that the failure of any Indemnified Party to give such notice shall not relieve the Indemnifying Party of its obligations or liabilities pursuant to this Agreement, except (and only) to the extent that it shall be finally determined by a court of competent jurisdiction (which determination is not subject to appeal or further review) that such failure shall have proximately and materially adversely prejudiced the Indemnifying Party.

An Indemnified Party shall have the right to employ separate counsel in any such Proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party or Parties unless: (i) the Indemnifying Party has agreed in writing to pay such fees and expenses; or (ii) the Indemnifying Party shall have failed promptly to assume the defense of such Proceeding and to employ counsel reasonably satisfactory to such Indemnified Party in any such Proceeding; or (iii) the named parties to any such Proceeding (including any impleaded parties) include both such Indemnified Party and the Indemnifying Party, and such Indemnified Party shall have been advised by counsel in writing that a conflict of interest exists if the same counsel were to represent such Indemnified Party and the Indemnifying Party (in which case, if such Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense thereof and such counsel shall be at the expense of the Indemnifying Party). It being understood, however, that the Indemnifying Party shall not, in connection with any one such Proceeding be liable for the fees and

Securities Purchase Agreement (draft from O.C.)-Final  (N0583265.DOC;2)          Page 28 of 44

expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, which firm shall be appointed by a majority of the Indemnified Parties; provided, however, that in the case a single firm of attorneys would be inappropriate due to actual or potential differing interests of conflicts between such Indemnified Parties and any other party represented by such counsel in such Proceeding or otherwise, then the Indemnifying Party shall be liable for the fees and expenses of one additional firm of attorneys with respect to such Indemnified Parties. The Indemnifying Party shall not be liable for any settlement of any such Proceeding effected without its written consent, which consent shall not be unreasonably withheld. No Indemnifying Party shall, without the prior written consent of the Indemnified Party, effect any settlement of any pending Proceeding in respect of which any Indemnified Party is a party, unless such settlement includes an unconditional release of such Indemnified Party from all liability on claims that are the subject matter of such Proceeding.

All fees and expenses of the Indemnified Party (including reasonable fees and expenses to the extent incurred in connection with investigating or preparing to defend such Proceeding in a manner not inconsistent with this Section) shall be paid to the Indemnified Party, as incurred, within ten Trading Days of written notice thereof to the Indemnifying Party (regardless of whether it is ultimately determined that an Indemnified Party is not entitled to indemnification hereunder; provided, that the Indemnifying Party may require such Indemnified Party to undertake to reimburse all such fees and expenses to the extent it is finally judicially determined that such Indemnified Party is not entitled to indemnification hereunder).

(iv)    Contribution. If a claim for indemnification under Section 6(e)(i) or (ii) is unavailable to an Indemnified Party (by reason of public policy or otherwise), then each Indemnifying Party, in lieu of indemnifying such Indemnified Party, shall contribute to the amount paid or payable by such Indemnified Party as a result of such Losses, in such proportion as is appropriate to reflect the relative fault of the Indemnifying Party and Indemnified Party in connection with the actions, statements or omissions that resulted in such Losses as well as any other relevant equitable considerations. The relative fault of such Indemnifying Party and Indemnified Party shall be determined by reference to, among other things, whether any action in question, including any untrue or alleged untrue statement of a material fact or omission or alleged omission of a material fact, has been taken or made by, or relates to information supplied by, such Indemnifying Party or Indemnified Party, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action, statement or omission. The amount paid or payable by a party as a result of any Losses shall be deemed to include, subject to the limitations set forth in Section 6(e)(iii), any reasonable attorneys' or other reasonable fees or expenses incurred by such party in connection with any Proceeding to the extent such party would have been indemnified for such fees or expenses if the indemnification provided for in this Section was available to such party in accordance with its terms.

The parties hereto agree that it would not be just and equitable if contribution pursuant to this Section 6(e)(iv) were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to in the immediately preceding paragraph. Notwithstanding the provisions of this Section 6(e)(iv) no Buyer shall be required to contribute, in the aggregate, any amount in excess of the amount by which the proceeds actually received by such Buyer from the sale of the Registrable Securities subject to the Proceeding exceeds the amount of any damages that such Buyer has otherwise been required to pay by reason of such untrue or alleged untrue statement or omission or alleged omission. No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation. The indemnity and contribution agreements contained in

this Section are in addition to any liability that the Indemnifying Parties may have to the Indemnified Parties.

(c) <u>Dispositions</u>. Each Buyer agrees that it will comply with the prospectus delivery requirements of the Securities Act as applicable to it in connection with sales of Registrable Securities pursuant to the Registration Statement. Each Buyer further agrees that, upon receipt of a notice from the Company of the occurrence of any event of the kind described in Sections 6(c)(ii)(B)(v), (vi) or (vii), such Buyer will discontinue disposition of such Registrable Securities under the Registration Statement until such Buyer's receipt of the copies of the supplemented Prospectus and/or amended Registration Statement contemplated by Section 6(c)(ii)(I), or until it is advised in writing (the "**Advice**") by the Company that the use of the applicable Prospectus may be resumed, and, in either case, has received copies of any additional or supplemental filings that are incorporated or deemed to be incorporated by reference in such Prospectus or Registration Statement. The Company may provide appropriate stop orders to enforce the provisions of this paragraph.

(d) <u>No Piggyback on Registrations</u>. Neither the Company nor any of its security holders (other than the Buyers in such capacity pursuant hereto) may include securities of the Company in the Registration Statement other than (i) the Registrable Securities, (ii) those shares of Common Stock issued in connection with acquisitions consummated prior to the date hereof and listed on Schedule 6(g) hereto, and (iii) up to 4 million shares of Common Stock issued in connection with certain targeted acquisitions to the extent such acquisitions close prior to the filing of the Registration Statement as set forth on Schedule 6(g).

(e) <u>Piggy-Back Registrations</u>. If at any time during the Effectiveness Period there is not an effective Registration Statement covering all of the Registrable Securities and the Company shall determine to prepare and file with the SEC a registration statement relating to an offering for its own account or the account of others under the Securities Act of any of its equity securities, other than on Form S-4 or Form S-8 (each as promulgated under the Securities Act) or their then equivalents relating to equity securities to be issued solely in connection with any acquisition of any entity or business or equity securities issuable in connection with stock option or other employee benefit plans, then the Company shall send to each Buyer written notice of such determination and if, within ten days after receipt of such notice, any such Buyer shall so request in writing, the Company shall include in such registration statement all or any part of such Registrable Securities such Buyer requests to be registered.

1. SEC COMMENT LETTER. The Buyers hereby acknowledge that they have reviewed the disclosure regarding the Company's receipt of a Comment Letter from the United States Securities and Exchange Commission (the "Comment Letter") as set forth in the Company's Quarterly Report on Form 10-Q for the quarter ended September 30, 2005 (the "Report"). The Buyers acknowledge that the Company remains in communication with the SEC in an effort to resolve the matters set forth in the Comment Letter, and that the Company is unable at this time to determine what impact, if any, the matters set forth in the Comment Letter may have on the Company's financial condition, and/or financial statements and that the Company has made no additional representations or warranties to the Buyers with regard to the Comment Letter. The Buyers hereby agree that in the event that a restatement of the Company's financial statements occurs as a result of the resolution of the Comment Letter, such restatement shall not in and of itself constitute a breach of a representation or warranty by the Company under this Agreement.

Securities Purchase Agreement (draft from O.C.)-Final (N0583265.DOC;2)          Page 30 of 44

2. TERMINATION. In the event that the Closing shall not have occurred with respect to a Buyer on or before five (5) days from the date hereof due to the Company's or such Buyer's failure to satisfy the conditions set forth in Section 1(d) above (and the nonbreaching party's failure to waive such unsatisfied condition(s)), the nonbreaching party shall have the option to terminate this Agreement with respect to such breaching party at the close of business on such date without liability of any party to any other party.

3. MISCELLANEOUS.

(a) Governing Law; Jurisdiction; Jury Trial. All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of New York. Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. **EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.**

(b) Counterparts. This Agreement may be executed in two or more identical counterparts, all of which shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party; provided that a facsimile signature shall be considered due execution and shall be binding upon the signatory thereto with the same force and effect as if the signature were an original, not a facsimile signature.

(c) Headings. The headings of this Agreement are for convenience of reference and shall not form part of, or affect the interpretation of, this Agreement.

(d) Severability. If any provision of this Agreement shall be invalid or unenforceable in any jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of this Agreement in that jurisdiction or the validity or enforceability of any provision of this Agreement in any other jurisdiction.

(e) Entire Agreement; Amendments. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by the Company and each of the Buyers or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this

Securities Purchase Agreement (draft from O.C.)-Final (N0583265.DOC;2)    Page 31 of 44

Agreement shall be deemed to be a continuing waiver in the future or a waiver of any subsequent default or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right. The Company has not, directly or indirectly, made any agreements with any Buyers relating to the terms or conditions of the transactions contemplated by the Transaction Documents except as set forth in the Transaction Documents.

(f) <u>Notices</u>. Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; (ii) upon receipt, when sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); or (iii) one Business Day after deposit with an overnight courier service, in each case properly addressed to the party to receive the same. The addresses and facsimile numbers for such communications shall be:

If to the Company:

PainCare Holdings, Inc.
1030 N. Orange Avenue, Suite 105
Orlando, Florida
Telephone: 407-367-0944
Facsimile: 407-367-0950
Attention: Mark Szporka

With a copy to:

Adorno & Yoss LLP
350 East Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida 33301
Telephone: 954-763-1200
Facsimile: 954-766-7800
Attention: Joel D. Mayersohn

If to a Buyer, to its address and facsimile number set forth on the Schedule of Buyers, with copies to such Buyer's representatives as set forth on the Schedule of Buyers,

or to such other address and/or facsimile number and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party five (5) days prior to the effectiveness of such change. Written confirmation of receipt (A) given by the recipient of such notice, consent, waiver or other communication, (B) mechanically or electronically generated by the sender's facsimile machine containing the time, date, recipient facsimile number and an image of the first page of such transmission or (C) provided by an overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from an overnight courier service in accordance with clause (i), (ii) or (iii) above, respectively.

(g) <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. The Buyer may, with prior written notice to the Company, assign its registration rights under Sections 6(a), (b), (c), (d), (f), (g), and (h) of this Agreement to transferees of the Common Shares, the Warrants, and the Warrant Shares, but may not